*In re* MARRIAGE OF MARILYN BOLTON, Petitioner-Appellant, and DOUGLAS BOLTON, Respondent-Appellee.

First District (3rd Division)   No. 82—2333

Opinion filed December 19, 1984.

Doss, Puchalski, Keenan & Bargiel, Ltd., of Chicago (Paul J. Bargiel and Owen L. Doss, of counsel), for appellant.

James E. Beckley & Associates, of Chicago (James E. Beckley and Richard S. Schultz, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The petitioner, Marilyn Bolton, filed a petition for rule to show cause against her ex-husband, Douglas Bolton, alleging that he had made no alimony payments to her in 1982 in violation of their judgment for divorce. Following a hearing to determine the amount of Douglas' net income for 1981, the trial court denied the petition. The petitioner appeals. The issues presented for review are (1) whether the trial court erred in determining that Douglas' 1981 net income did not exceed $60,000, and (2) whether Marilyn was unfairly penalized by a change in the law defining "adjusted gross income."

Marilyn and Douglas were divorced on January 7, 1977. The parties had entered into an oral settlement agreement on October 12, 1976, which was incorporated into the judgment. It provided, in pertinent part, as follows:

> "C. That as and for consideration for the waiver of alimony aforementioned by the Plaintiff, MARILYN BOLTON, the Defendant hereby agrees to pay to the Plaintiff, and the Plaintiff hereby agrees to accept, as and for alimony in gross, the sum of TWO HUNDRED TWENTY FIVE THOUSAND and No/100 ($225,000.00) DOLLARS, Payable at the rate of TWENTY FIVE THOUSAND and No/100 ($25,000.00) DOLLARS per year in euqal [sic] monthly installments ***.
>
> * * *
>
> E. That at the conclusion of the fifth (5) year following the entry of this Judgment, the amount to be paid by Defendant to Plaintiff shall be reduced to a sum equal to TWENTY (20%) PERCENT of his net income from all sources in the event that his net annual income at such time shall be no greater than SIXTY THOUSAND and No/100 ($60,000.00) DOLLARS, as computed on the Defendant's Federal Income Tax Return for the taxable year of 1981, net annual income being that sum remaining after deduction of State, Federal, Municipal or other deductible taxes from adjusted gross income as represented on said Federal Income Tax Return. In the event that Defendant's net annual income for the taxable year 1981, shall exceed SIXTY THOUSAND and No/100 ($60,000.00) DOLLARS, then the Defendant shall pay the aforementioned annual sum of TWENTY FIVE THOUSAND and No/100 ($25,000.00) DOLLARS during the year 1982, subject to an annual reappraisal of Defendant's income at the conclusion of each taxable year until such time as the Plaintiff shall have received the full amount of alimony in gross as required by and under the terms of the

agreement between the parties hereto."

On July 26, 1982, Marilyn filed a petition for rule to show cause, alleging that Douglas had made no payments under the judgment during 1982. At a hearing on the petition on August 25, 1982, the amount of Douglas' net income for 1981 was discussed. Marilyn's counsel argued that Douglas' 1981 net income was $122,892, which was in excess of $60,000, and that she was therefore entitled to $25,000 in alimony in 1982. Douglas' attorney countered that since Douglas' adjusted gross income as represented on his 1981 tax return was $37,595, which did not exceed $60,000, he was obligated to pay her in 1982 only 20% of that amount less taxes. The trial court, agreeing with the latter argument, denied the petition. This appeal ensued.

Marilyn contends that the trial court erred in concluding that Douglas' net annual income from all sources in 1981 was less than $60,000. The judgment and settlement agreement defined "net annual income" as "that sum remaining after deduction of State, Federal, Municipal or other deductible taxes from adjusted gross income as represented on [Douglas'] Federal Income Tax Return." According to Douglas' 1981 Form 1040 individual income tax return, he received income from salaries, interest, dividends and capital gains in the amount of $121,342. After adjustment for his dividends exclusion, business losses and expenses, capital losses and losses from his tax shelter partnerships, Douglas' total income was $53,282. Subtracting $15,584 for alimony paid produced an adjusted gross income of $37,698. Pursuant to Paragraph E of the judgment and settlement agreement, after a deduction of $5,037 for State and Federal income tax and general sales tax, $32,661 was Douglas' "net annual income" as defined in the judgment and settlement agreement.

■ Marilyn asserts that allowing Douglas to make adjustments for business losses and expenses, capital losses and alimony paid in computing his adjusted gross income would be unconscionable. The Internal Revenue Code requires such adjustments in computing adjusted gross income. (I.R.C. secs. 62(1), (4), (13) (1976 & Supp. IV 1980).) According to the divorce judgment, beginning in 1982, the amount of alimony due Marilyn would be based on Douglas' adjusted gross income for the prior year as reflected in the prior year's tax return. Since Marilyn agreed to these terms, she cannot now be heard to complain that they are unfair. The trial court did not err in determining that Douglas' net annual income, as defined in the settlement agreement, from all sources in 1981 was less than $60,000.

Marilyn argues that a change in the law defining "adjusted gross income" occurred subsequent to the dates of the agreement and the

entry of the judgment for divorce, and that she has been unfairly penalized thereby. We note that a more appropriate method for a complaint of this type would be to seek modification of the judgment in the trial court.

■■ ■ When the provisions of an oral agreement are incorporated into a judgment, the agreement is merged in the judgment and is conclusive upon the parties in the same manner as if the court had made the determination. (*In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188.) After the rendition of a divorce decree incorporating the settlement agreement of the parties, the rights of the parties rest on the decree and not on their agreement. *Jacobs v. Jacobs* (1946), 328 Ill. App. 133, 65 N.E.2d 588.

On October 4, 1976, the Tax Reform Act of 1976 (TRA) (Pub. L. No. 94—455, tit. V, sec. 502(a), 90 Stat. 1525, 1559) amended I.R.C. sec. 62 to authorize a deduction for alimony payments from gross income in calculating adjusted gross income. Section 502(c) of Public Law No. 94—455 provided that this amendment would apply to taxable years beginning after December 31, 1976. Prior to 1977, alimony paid was an amount deducted from adjusted gross income to arrive at taxable income.

■ The parties' oral settlement agreement of October 12, 1976, was incorporated into the judgment for divorce. Marilyn's rights as to alimony rest on the judgment, which was entered on January 7, 1977. At that time, the amendment Marilyn complains of had already taken effect. Therefore, she has not been unfairly penalized by the redefinition of "adjusted gross income."

Although our research has revealed no Illinois case on this issue, both Connecticut and Kansas have encountered arguments similar to Marilyn's. In these cases, the divorce judgment was entered prior to the effective date of the TRA. The courts ruled in favor of the divorced husband. Where the foundation for computation of alimony payments was the ex-husband's adjusted gross income as reflected on his income tax return, computation of the alimony payments according to TRA's redefinition of "adjusted gross income" has been permitted. See *Blaydes v. Blaydes* (1982), 187 Conn. 464, 446 A.2d 825; *Beard v. Beard* (1980), 5 Kan. App. 2d 458, 618 P.2d 856.

For the foregoing reasons the order of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and WHITE, J., concur.